J-S74005-16

2016 PA Super 239

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PATRICK JOSEPH MCLAINE | |
| Appellant | No. 213 EDA 2016 |

Appeal from the Judgment of Sentence December 11, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000830-2012

BEFORE:  OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:          **FILED NOVEMBER 07, 2016**

Patrick Joseph McLaine ("Appellant") appeals from the judgment of sentence imposed on December 11, 2015, in the Court of Common Pleas of Northampton County after this Court remanded the matter for resentencing as to the length of the probationary period, which took Appellant's sentence beyond the statutory maximum.  On remand, the trial court remedied the illegal sentence by eliminating the probationary period while retaining the original upward departure sentence of six to twelve months' incarceration for third-degree misdemeanor theft by failure to make required disposition of funds received.[1]  Appellant now contends his sentence is both illegal and the product of the court's abuse of sentencing discretion.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

*(Footnote Continued Next Page)*

We previously set forth the factual and procedural history of the case

as follows:

On January 11, 2013, a jury convicted McLaine and his co-defendant, Robert J. Kearns,[ ] of theft by failure to make required disposition of funds received.[ ]  As will be discussed below, the court ultimately sentenced McLaine to a term of six to 12 months' incarceration, 12 months' probation, a fine of $2,500.00, and restitution in the amount of $832,460.00.

***

The facts and procedural history are as follows.[ ]  McLaine and Kearns were the two principals of a company known as Municipal Energy Managers, Inc. ("MEM").  On July 2, 2007, McLaine and Kearns entered into a written contract with the Township of Bethlehem, a municipality in Northampton County ("Bethlehem Township").  The contract provided MEM would act as an agent for Bethlehem Township to facilitate the purchase of township street lights from the public utility company, Pennsylvania Power and Light ("PPL")[, the purpose of which was to save the township money by accessing a lower utility rate for municipal-owned streetlights].  McLaine and Kearns drafted the contract and determined the total cost to do all work necessary for Bethlehem Township to purchase the street lights from PPL.  A price of $1,001,230.00 was to be used to pay any and all costs of the purchase including, but not limited to, paying PPL for the transfer of the street lights.  The contract provided performance was to occur within a period of 12 to 18 months, ending anywhere between July 2, 2008 and January 2, 2009, and was considered completed when ownership of the street lights was transferred from PPL to the township.  Additionally, the contract stated the township would be receiving the lower utility rate by January of 2009.  For its services, MEM was to receive a five percent commission of $50,060.00

To begin performance, MEM requested Bethlehem Township pay them $832,460.00.  On July 3, 2007, McLaine and Kearns received a check in the requested amount.  On July 5, 2007, the

(Footnote Continued)

---

[1] 18 Pa.C.S. § 3927.

check was deposited into a general corporate bank account in the name of MEM, which McLaine and Kearns jointly controlled.[ ] [With respect to the contract, there was no escrow requirement that Bethlehem Township's funds be held separately from the rest of MEM's other accounts. *See* N.T., 1/10/2013, at 162.]

In October 2007, McLaine and Kearns wrote checks from the MEM general corporate account to themselves. Specifically, on October 1, 2007, a check was made payable to Kearns for the amount of $366,600.00. That same day, a check was issued to McLaine in the amount of $499,945.000, as well as a second check to McLaine in the amount of $109,059.00. All three checks were signed by both defendants. At trial, McLaine and Kearns testified these checks represented bonuses paid to themselves.

On August 5, 2009, PPL sent a letter to Kearns, stating that it had learned MEM was performing unauthorized work on its streetlights. The letter identified Bethlehem Township as one of the affected municipalities.

Despite receiving the funds, MEM did not contact PPL to initiate the transfer of street lights until August 10, 2009, eight months past the 18-month completion deadline, by sending a letter announcing its intent to purchase the streetlights. On September 17, 2009, PPL sent a letter to MEM, outlining the estimated costs of the total project, which was to be $271,180.00, well below MEM's estimate of $1,001,230.00. The letter also requested MEM make a deposit to PPL in the amount of $22,525.00 in order to initiate the process of the light transfer. McLaine and Kearns did not respond to PPL's request or make the payment. On October 5, 2009, MEM sent Bethlehem Township an invoice for $131,438.00. The township did not pay it.

In January of 2010, a grand jury investigation was conducted in relation to this matter. On January 26, 2012, the grand jury returned a presentment, recommending the arrest of McLaine and Kearns on charges of theft by failure to make required disposition of funds received, misapplication of entrusted property, and criminal conspiracy.

A criminal complaint was then filed on February 16, 2012. As noted above, the two men were tried together. The joint jury

trial began on January 7, 2013. On January 11, 2013, the jury found McLaine and Kearns guilty of theft by failure to make required disposition of funds received, but not guilty of the other two charges.

On April 12, 2013, and April 19, 2013, McLaine and Kearns, respectively, were both sentenced to a term of 16 to 60 months' incarceration, 60 months of probation, and restitution in the amount of $832,460.00. The court graded the theft offense as a third-degree felony pursuant to 18 Pa.C.S. § 3903 (grading of theft offenses) on the basis that the value of the theft was in excess of $2,000.00.

On April 24, 2013, McLaine and Kearns filed motions challenging the trial court's grading of the offense as a third-degree felony pursuant to **Apprendi v. New Jersey**, 530 U.S. 466 (2000). They argued that the verdict slip could not support a felony conviction because it did not require the jury to determine the value of the property that gave rise to the convictions, *i.e.*, the commencement check issued by Bethlehem Township. The trial court agreed and on May 31, 2013, granted the motion.

On June 4, 2013, the court re-sentenced McLaine and Kearns with regard to the theft offense, grading it as a third-degree misdemeanor, and ordered them to serve a term of six to 12 months' incarceration, 60 months' probation, a fine of $2,500.00, and restitution in the amount of $832,460.00. Subsequently, on June 13, 2013, McLaine and Kearns filed post-sentence motions, including a motion for reconsideration of sentence. On July 31, 2013, the trial court entered an order, modifying their sentences to a consecutive period of probation of 12 months rather than 60 months. The remainders of their sentences were not changed. [Appellant's] appeal followed.

**Commonwealth v. McLaine**, No. 2600 EDA 2013, unpublished memorandum at 1-6 (Pa.Super. filed November 13, 2015).

In addressing Appellant's initial direct appeal, we rejected six issues directed at his verdicts but agreed with his challenge to the legality of sentence. As noted, *supra*, we determined Appellant's aggregate two-year

sentence, which included a one-year probationary tail, exceeded the statutory maximum sentence of one-year applicable to a misdemeanor of the third degree. *See* 18 Pa.C.S. § 106(b)(8). Accordingly, we vacated judgment of sentence and remanded the matter "for re-sentencing as to the length of the probationary period." *McLaine*, at 40. We came to the same decision and entered an identical order in Kearns' appeal, as well.

At Appellant's and Kearns' resentencing hearing, the Commonwealth argued for the reinstatement of a statutory maximum six to 12-month sentence, but with no probationary tail, in accordance with this Court's memorandum decision. N.T., 12/11/15, at 5-6. The Commonwealth also advised the court that it would object to any parole "because they've [Kearns and Appellant] offered no restitution on this case whatsoever, although they've been out and had that opportunity." *Id.*

Counsel for Appellant suggested that our decision could be read as a directive to eliminate either the probationary period or the sentence of incarceration. Counsel also informed the court that he believed the guidelines called for restorative sanctions without incarceration, and he objected to a six to twelve-month sentence of incarceration despite Appellant's having "no prior record at all." *Id.*, at 8.[2]

---

[2] With an offense gravity score of one and a prior record score of zero, the standard range applying to each of the defendants' third-degree misdemeanors was RS to RS, with an aggravated range of RS to three months' incarceration. N.T., 6/4/13, at 8. *See* 42 Pa.C.S.A. § 303.16(a). *(Footnote Continued Next Page)*

The Commonwealth responded:

First of all, I don't believe the Superior Court at all addressed the [trial court's] decision to impose the maximum statutory offense permitted by law. The whole appeal was based upon the consecutive probation that went beyond the twelve months.

I think that [the trial court], you sat as the trial judge in this case. We're talking about hundreds of thousands of dollars that were basically stolen by these two defendant. They have no remorse. They're appealing all over the state with the same type of scheme that the jury found that they were involved with.

And this court is not bound by those guidelines when it's an egregious case. And I believe that you made a record on that, and certainly can make a record again, to impose the sentence that you intended, which was six to twelve months.

*Id.*, at 9.

The court agreed with the Commonwealth that elimination of the probationary tail would satisfy the directive of this Court. After announcing that it was adopting the "previous records made in all respects" at the prior sentencing hearing, the court imposed a six to 12-month sentence of incarceration without any probationary tail. *Id.*, at 10. On December 23, 2015, the trial court denied Appellant's motion for reconsideration challenging, *inter alia*, the discretionary aspects of his sentence. This timely appeal followed.

Appellant raises the following issue for our review.

_(Footnote Continued)_ ————————————

Basic Sentencing Matrix (indicating M3 theft is with a prior record score of zero is RS plus-or-minus three months.

**1. Whether, where the trial court initially found that no aggravating factors existed and placed no sentencing factors on the record, the trial unreasonably [sic] sentenced Appellant outside of the aggravated range of the sentencing guidelines?**

Appellant's brief at 7.

As Appellant raises a challenge to the discretionary aspects of his sentence, we note the applicable standard of review is as follows.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa.Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify

sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that he preserved this issue by including it in his post-sentence motion for reconsideration. Appellant has also included in his brief a statement pursuant to Pa.R.A.P. 2119(f). We now consider whether Appellant has presented a substantial question for our review.

What constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

Appellant's Rule 2119(f) statement presents the issue that "Appellant was sentenced outside of the aggravated range of the sentencing guidelines

- 8 -

without sufficient justification from the court. . . . [W]hether a court specified specific reasons for an aggravated range sentence is a substantial question for review." Appellant's brief at 11 (citation omitted). Such a challenge raises a substantial question for our review. *See*, *e.g.*, *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa.Super. 2002).

In reviewing the court's exercise of sentencing discretion, we refer to *Griffin*, where we recognized:

> The sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. [*Commonwealth v. Eby*, 784 A.2d 204 (Pa.Super. 2001)] at 207. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. *Id.* at 206. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only. *Id.*

*Griffin*, 804 A.2d at 7–8.

At the resentencing hearing, the trial court imposed the same six to twelve-month sentence of incarceration it imposed previously in its amended sentence based on a corrected guideline sheet, but it did so without reiterating the specific reasons that it offered at the original hearing in support of an upward departure sentence. Instead, the court stated that it was incorporating "the previous records made in all respects." N.T. 12/11/15, at 10.

A review of the original sentencing hearing shows the court acknowledged receiving a presentence investigation report and a guideline statement. N.T., 4/12/13, at 2. The court heard family statements in mitigation, Appellant's remorseful allocution, and counsel's presentation of Appellant's record of public and community service. *Id.*, at 12-35.

A county commissioner addressed the court, reminding it that, because of Appellant's and Kearns' theft and deliberate misrepresentations, Bethlehem Township not only fails to own its streetlights as promised and pays higher electric rates, as well, but also, as of 2013, has paid $214,045.79 in interest payments on the $832,460 loan which the defendants misappropriated. *Id*. at 36. The township, in fact, is scheduled to make interest payments on the loan through 2027. *Id.* An additional result of Appellant's actions, according to the commissioner, was that the township had cut its workforce and left thirteen open positions vacant through 2012. *Id.*, at 37.

The Commonwealth advised the court that it gave the defendants the opportunity to make restitution in order to avoid prosecution, but Appellant and Kearns made none. *Id.*, at 8. Nor did the defendants offer any restitution between their January verdicts and April sentencing hearing, according to the prosecutor. *Id.*, at 39. Future restitution also seemed doubtful, the prosecutor concluded, given the defendants' bankruptcy filings and the defensive postures they assumed in various civil actions filed against them, where they have made no offers of settlement. *Id.*

Prior to announcing sentence, the court noted that it received and read ninety-four letters attesting to Appellant's character, and it acknowledged that the members of his community "have stepped up in substantial measure" on his behalf, adding to the difficulty of this case. *Id.*, at 41. Nevertheless, the court felt justified in imposing a sentence of incarceration given both the magnitude of the deception perpetrated and the substantial economic burden assumed by tens of thousands of residents, particularly in the absence of any restitution as of the date of sentencing. *Id.*, at 42-43.

The notes of testimony from the original sentencing hearing demonstrate that the court sentenced in adherence to the principles discussed in **Griffin**. At the post-remand resentencing hearing, the court specifically referenced the previous sentencing hearing record and incorporated it for purposes of resentencing Appellant to the same six to twelve-month sentence of incarceration minus a probationary period. Accordingly, we reject Appellant's claim alleging that the court failed to provide a factual basis and state specific reasons supporting his upward departure sentence.[3]

---

[3] Appellant also advances the discretionary aspects of sentencing challenge that the trial court failed to consider mitigating factors in setting sentence. The record belies this contention. As discussed *supra*, the court stated on the record at the time of Appellant's original sentencing that it considered Appellant's mitigation proffer closely before imposing sentence. In any event, we deem this issue waived for Appellant's failure to state it in his concise statement pursuant to Rule 2119(f).

- 11 -

Finally, Appellant asserts a challenge to legality of his sentence, but supports it with an inapposite line of decisions, including ***Apprendi v. United States***, 530 U.S. 466 (2000), which prohibits judicial fact-finding to enhance a sentence beyond that permitted by the verdict. Specifically, Appellant contends that because his original sentence of 16 to 24 months represented a standard range sentence on what proved to be an incorrect grading of his offense, it was incumbent upon the court to impose a standard range sentence of restorative sanctions on the regraded offense.[4] By imposing an upward departure sentence of six to 12 months, instead, the court must have engaged in additional fact-finding to find aggravating factors not reflected in the verdict. We disagree.

Given the downgrading of Appellant's offense, the court was required to lower the standard guideline range accordingly; however, it retained the discretion to consider the evidence adduced at trial and depart from the guideline range in imposing a new sentence within prescribed statutory limits. Because the court simply exercised this sentencing discretion, there is no ***Apprendi*** problem. ***See***, ***e.g.***, ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1270 n. 10 (Pa.Super. 2014) (holding neither ***Alleyne*** nor ***Apprendi*** implicated when sentencing court retains sentencing discretion to

---

[4] As we noted in our disposition of Appellant's previous direct appeal, this Court affirmed the grading of his offense as a third-degree misdemeanor. ***Mclaine***, ***supra*** at 39 n. 16.

depart from guideline range elevated post-verdict under sentencing enhancement statute).

Any objection Appellant has to the court's exercise of discretion in deviating from the standard guideline range in imposing Appellant's new sentence, therefore, implicates not the legality but, instead, the discretionary aspects of his sentence.[5]  We, therefore, reject his legality of sentence challenge.

Judgment of sentence is AFFIRMED.

_____

[5] Were we to construe Appellant's claim as a properly preserved aspect of his discretionary aspects of sentencing challenge, we would find it meritless.

As noted above, the court downgraded Appellant's offense from a third-degree felony to a third-degree misdemeanor after granting his *Apprendi*-based motion for reconsideration because the verdict slip did not require the jury to determine the value of the property that gave rise to his theft conviction.  Advised by a new, corrected sentencing guideline sheet setting a range of RS plus-or-minus three months, and operating under a reduced statutory maximum sentence of 12 months' incarceration applicable to a third-degree misdemeanor, the court deviated upward from the guideline ranges by three months in imposing its six to 12 month sentence.

Appellant contends the court's imposition of a standard range sentence on his third-degree felony conviction obligated it to sentence him in the standard range on his revised, misdemeanor conviction.  It was within the sound discretion of the sentencing court, however, to consider trial evidence and victim impact statements at sentencing and conclude that the circumstances and consequences of the crime, while typical for a third-degree felony, were atypically egregious and damaging for a third-degree misdemeanor.  Accordingly, we find no abuse of discretion in the court's decision to depart from a guideline range sentence on Appellant's third-degree misdemeanor.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2016