J-A01002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DARLENE RENEE NAKUTIS | No. 463 WDA 2016 |

Appeal from the Judgment of Sentence October 28, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000165-2014

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 07, 2017**

The Commonwealth appeals from the judgment of sentence imposed upon Appellee Darlene Renee Nakutis.  We affirm.

On April 28, 2014, Appellee was charged with burglary, simple assault, harassment, criminal mischief, and conspiracy to commit aggravated assault, burglary, simple assault, and criminal mischief.  As the transcript of the guilty plea is not contained in the record, we must rely upon the affidavit of probable cause in outlining the basis for these charges.  At approximately 2:30 a.m. on April 26, 2014, Edward Joseph Passamonte, Appellee, and Appellee's daughter entered the home of James and Charlotte Popielarcheck on 105 Third Street, Jefferson, Pennsylvania.  Mr. and Mrs. Popielarcheck and their thirty-two-year-old daughter Alexis were present.

_____

* Retired Senior Judge assigned to the Superior Court.

Mrs. Popielarcheck was watching television when she heard the front door open, and people walk into her home and yell for Alexis. Mrs. Popielarcheck went to the front door, recognized Appellee, and asked the three intruders to leave. Appellee then "punched her in the face and grabbed her hair." Affidavit of Probable Cause, 4/28/14, at 2. When Mrs. Popielarcheck screamed for help, Mr. Popielarcheck, who was sleeping in his bedroom, awoke and came to his wife's assistance.

Passamonte grabbed Mr. Popielarcheck by the neck, but Mr. Popielarcheck fought back. Appellee joined in the attack on Mr. Popielarcheck, jumping on top of him and punching him in the back of the head. Mr. Popielarcheck wrestled Passamonte to the ground, but Passamonte was able to "get up and punch [Mr. Popielarcheck] in the face." *Id*. at 1.

In the meantime, Alexis entered the room, and a fight among Alexis, Appellee, and Appellee's daughter ensued. Mrs. Popielarcheck went outside and summoned police. Passamonte, Appellee, and her daughter fled the house, entered a vehicle, and drove "through the yard as they left." *Id*. at 1. When police arrived, they discovered several items left at the scene, including a cell phone with a picture of Appellee and Passamonte on the front screen.

On May 1, 2015, Appellee pled guilty to criminal trespass, conspiracy to commit aggravated assault, conspiracy to commit criminal mischief, and

criminal mischief. Following entry of the guilty plea, a presentence report was prepared and the matter proceeded to sentencing. The applicable guidelines were as follows: 1) restorative sanctions to one year in jail for trespass; 2) twenty-two to thirty-six months imprisonment for conspiracy to commit aggravated assault, and 3) restorative sanctions to nine months incarceration for criminal mischief and conspiracy to commit criminal mischief. Since the nature of some of the crimes rendered Appellee ineligible for Recidivism Risk Reduction Incentive ("RRRI"), County Intermediate Punishment, and State Intermediate Punishment, the Commonwealth agreed to waive her ineligibility for those programs. N.T. Sentencing, 8/4/15, at 5.

Appellee presented mitigation evidence. Bonnie Mercer was Appellee's neighbor, had known her for about twenty years, and reported the following. Appellee attended a Baptist church in Clarksville. Ms. Mercer explained that Appellee went to the Popielarcheck home because Alexis had punched Appellee's daughter in a bar just before the incident in question, and Appellee thought her child was in danger. Prior to this incident, Appellee "has never been in trouble, she has always been a good neighbor." *Id*. at 8.

Apryle Garbutt, Appellee's daughter,[1] reported the following. Appellee watched her two children, a toddler and an infant, three or more days a week. Appellee had always been there to help people in the community and took one neighbor to the grocery store. Ms. Garbutt testified that Appellee was "always helping somebody out, going to church functions and everything. So she is a great woman." *Id*. at 17.

Debbie Ely had known Appellee for a long time. Appellee took Ms. Ely, who had a stroke, into her home after Ms. Ely's son ejected her from his residence. Appellee made alterations to her home to accommodate Ms. Ely's physical disabilities, and was not charging rent while Ms. Ely looked for other suitable housing.

Appellee engaged in allocution and expressed a sincere apology to the victims, who were in the courtroom. She explained that the Popielarchecks had been their neighbors for a few months, and her actions were a reaction to Alexis' attack on Appellee's daughter.

After the Popielarchecks spoke, the sentencing court took the matter under advisement, and imposed sentence on October 28, 2015. The court indicated that it had been informed that Appellee "witnessed her daughter

---

[1] It is unclear whether this daughter was the one who was involved in the altercation. The name of Appellee's daughter is not contained in the affidavit of probable cause because neither of the Popielarchecks could identify her, and police did not report what Alexis told them.

being assaulted while they were out having dinner at a restaurant bar," and that the attack was spurred by this prior altercation. N.T. Sentencing, 10/28/15, at 3. It was Appellee's daughter who opened the door to the Popielarchecks' home and began attacking Mrs. Popielarcheck. Then, Appellee "stepped in, for better or for worse, to try and – she intended to break up the fight." *Id*. at 4.[2]

The sentencing court credited the mitigation witnesses that Appellee had been a charitable woman who attended church and actively helped others in the community. Prior to sentencing, Appellee completed both drug and alcohol and anger management classes. It noted that Appellee had accepted responsibility for her actions and expressed remorse by pleading guilty and apologizing for her actions. After the court accepted the district attorney's "waiver of any and all ineligibilities for sentence diversion programs," it found her eligible to serve a sentence of County Intermediate Punishment. *Id*. at 19. Appellee was sentenced to twenty days of incarceration in the county jail followed by 710 days of supervised county probation.

---

[2] The sentencing court implicitly gave credence to Appellee's version of events. While we relied upon the affidavit of probable cause to recite the facts of the crimes, that affidavit was the one-sided version proffered to police by Mr. and Mrs. Popielarcheck.

The Commonwealth filed a timely post-sentence motion. That motion was denied by operation of law on March 4, 2016, and this timely appeal followed. The Commonwealth complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement preserving the issues presented on appeal. The Commonwealth presents these issues:

> I. Did the court err in its imposition of a below-mitigated range, county intermediate punishment sentence which was not in accordance with the applicable statutory provisions?
>
> II. Did the court abuse its discretion by imposing a below-mitigated range, county intermediate punishment sentence for aggravated assault without providing valid supporting reasons?

Appellant's brief at 4.

As we recently observed in **Commonwealth v. McLaine**, 150 A.3d 70, 76 (Pa.Super. 2016) (citation omitted), "[a]n appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right." Instead, to invoke our jurisdiction involving a challenge to the discretionary aspects of a sentence, an appellant must satisfy the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id**.

Herein, the Commonwealth filed a timely appeal, and preserved its contentions in a post-sentence motion and Pa.R.A.P. 1925(b) statement. Additionally, it presented a Pa.R.A.P. 2119(f) statement in its brief. ***See*** Commonwealth's brief at 16. It complains about the fact that the sentence was below the guideline ranges. A position that the sentencing court failed to justify a sentence that is not within the applicable guideline ranges raises a substantial question. ***McLaine***, ***supra***. We thus find that the Commonwealth has properly invoked our jurisdiction, and we will address the merits of the Commonwealth's issues on appeal. We note that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***McLaine***, ***supra*** at 75–76.

The Commonwealth's first position relates to whether a County Intermediate Punishment sentence was appropriately imposed and whether one actually was imposed. The first assertion appears to relate to Appellee's failure to meet the eligibility requirements for County Intermediate

- 7 -

Punishment. Commonwealth's brief at 18. However, since the Commonwealth expressly waived those requirements and the sentencing court accepted that waiver, we find this assertion meritless.

The Commonwealth next suggests that a sentence of County Intermediate Punishment was not actually imposed. Its argument on this question is not a model of clarity, but it apparently believes that a County-Intermediate-Punishment sentence was not levied because there was no combination of programs and the court did not impose restorative sanctions.[3] Commonwealth's brief at 19-22. The sentence in question was

_____

[3] The pertinent statute states:

**(a) Description.--**County intermediate punishment program **options** shall include the following:

(1) Restrictive intermediate punishments providing for the strict supervision of the offender, including programs that:

(i) house the offender full or part time;

(ii) significantly restrict the offender's movement and monitor the offender's compliance with the program; or

(iii) involve a combination of programs that meet the standards set forth under subparagraphs (i) and (ii).

(2) When utilized in combination with restrictive intermediate punishments, restorative sanctions

*(Footnote Continued Next Page)*

- 8 -

twenty days in jail followed by 710 days of supervision by the Greene County Probation and Parole County Intermediate Punishment, which was a total, flat sentence of two years supervision, in compliance with 42 Pa.C.S. § 9763 (When imposing county intermediate punishment, the court must specify "the length of the term for which the defendant is to be in a county intermediate punishment program.").

Moreover, Appellee's movement was completely restricted for twenty days since she was placed in jail, and she already completed a drug and alcohol rehabilitation program and an anger management program. Additionally, a restorative sanction was levied in the form of 710 days of probation. Thus, there was a combination of programs imposed upon Appellee, including jail, programs addressing anger management and drug and alcohol issues, and supervised probation. We therefore reject the Commonwealth's first issue.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> providing for nonconfinement sentencing options that:
>
> > (i) Are the least restrictive in terms of the constraint of the offender's liberties.
> >
> > (ii) Do not involve the housing of the offender, either full or part time.
> >
> > (iii) Focus on restoring the victim to pre-offense status.

42 Pa.C.S. § 9804(a) (emphasis added).

The Commonwealth's second contention on appeal challenges the sentencing court's decision to deviate from the guidelines. A sentencing court is permitted to deviate from the sentences recommended in the guidelines, as they are merely advisory. *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007); *McLaine*, *supra*. When a court does sentence outside the guidelines, it "must place on the record its reasons for the deviation." *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa.Super. 2009).

The Superior Court's standard of review of a deviation sentence was extensively analyzed by the seminal Supreme Court decision in *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). The *Walls* Court stressed the deferential nature of our examination of any sentence, stating that the "sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Id*. at 961 (citation and quotation marks omitted). It continued that the sentencing court is in a superior position than this Court when deciding on an appropriate sentence because it observes the defendant and his or her articulation of remorse or indifference. "Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review." *Id*.

Our Supreme Court noted that this Court's ability to review a sentence is constrained by 42 Pa.C.S. § 9781(c). That statute provides that we can

vacate a sentence and remand for re-sentencing only if we find 1) that the court intended to sentence within the guidelines but "applied the guidelines erroneously;" 2) a sentence was imposed within the guidelines "but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or 3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id*.

Thus, in this case, we may reverse the sentence if it is "unreasonable." While the statute does not contain a definition of what renders a sentence unreasonable, the *Walls* Court filled that gap, stating: "'unreasonable' commonly connotes a decision that is 'irrational' or not guided by sound judgment." *Id*. at 963. Our High Court admonished that the reversal of a sentence on grounds of unreasonableness should "occur infrequently, whether the sentence is above **or below** the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review." *Id*. (emphasis added).

Our High Court concluded that this Court can find a sentence not guided by sound judgment or irrational in only two situations. First, it is unreasonable if the sentencing court did not weigh the "general standards applicable to sentencing found in Section 9721, *i.e.,* the protection of the public; the gravity of the offense in relation to the impact on the victim and

the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b)." *Id*. at 964; *see* 42 Pa.C.S. § 9721(b) (In determining whether to impose a sentence of imprisonment, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.).

In the present case, the sentencing court had the benefit of a presentence report and articulated that a sentence below the mitigated range was warranted due to Appellee's lack of a prior record, "her willingness to institute change in her character by voluntarily completing drug, alcohol and anger management classes, her roots in the community and the pleas of family members dependent upon her." Trial Court Opinion, 7/8/16, at (unnumbered page) 8. Since a presentence report was prepared, the court is deemed to have weighed the § 9721(b) factors. *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988) (when a court has a presentence report we are required to presume that it weighed the pertinent sentencing considerations).

Second, we are allowed to reverse a departure sentence if it is unreasonable under the guidelines provided by 42 Pa.C.S. § 9781(d):

> In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

We cannot conclude that the court's stated reasons for its sentence established that the sentence was irrational or not guided by sound judgment. As to the nature and circumstances of the offense, as explained by Appellee and accepted by the court, Appellee saw her daughter assaulted and was reacting to that situation. The facts as set forth in the affidavit of probable cause do not reveal that Alexis instigated an altercation and provide only the version of events of the victims. In analyzing Appellee's history and characteristics, she lacked a prior criminal history and was a productive and charitable member of the community, attending church and helping people who were in need. Appellee addressed issues that triggered the behavior in question by completing anger management and alcohol and drug programs.

Moreover, the sentencing court observed and heard Appellee's apology at the first sentencing proceeding and credited her expression of sorrow. It had the unique ability to ascertain whether her expressions of remorse were heartfelt and whether she was entitled leniency. Additionally, it relied upon

the aforementioned presentence investigation. The findings upon which the sentence was based are supported by the record, and the guidelines, as noted, are not mandatory.

We are aware that the court relied upon Appellee's lack of a criminal history as justification for sentencing outside the guidelines, which is improper since the prior record score, which reflects a defendant's criminal history, is already factored into the guidelines. **Commonwealth v. Smith**, 673 A.2d 893 (Pa. 1996) (lack of prior criminal history cannot be the sole basis for sentencing below mitigated range because that consideration is reflected in a defendant's prior record score); **Commonwealth v. Darden**, 531 A.2d 1144, 1148–49 (Pa.Super. 1987) ("a sentencing court should not sentence in the mitigated minimum range, the aggravated minimum range, or outside the applicable guideline ranges based solely upon criterion already incorporated into the guidelines").

However, the sentencing court also articulated other, valid reasons for sentencing below the mitigated range. Appellee was actively involved in helping her community. She took a person grocery shopping and was housing another, disabled friend rent-free while she was homeless. Appellee also helped care for her grandchildren, and regularly attended church and engaged in activities there. Finally, she expressed sincere remorse at her actions. Since the sentencing court articulated that the basis for sentencing Appellee in the mitigated range rested not just upon her lack of a prior

- 14 -

criminal history but also upon other permissible sentencing factors that were sound and guided by reason, we must affirm. **Smith**, **supra** (while court erroneously relied upon lack of criminal history for departure sentence, sentence must be affirmed since it was also premised upon other, valid considerations).

Viewed through the lens of the factors outlined in § 9781(d), we cannot conclude that the sentence herein was one of those rare ones that can be termed unreasonable. As there was no abuse of discretion and the sentence was neither irrational nor unguided by sound judgment, we must affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017