J-S39016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| TRACY ANN STEPHENSON | |
| Appellant | No. 1228 WDA 2016 |

Appeal from the Judgment of Sentence April 11, 2016
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0002828-2014

BEFORE:  BENDER, P.J.E., BOWES AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JULY 26, 2017**

Tracy Ann Stephenson appeals from the judgment of sentence of eighteen to forty years imprisonment that was imposed after she entered a guilty plea to third-degree murder.  We reject her challenge to the discretionary aspects of the sentence imposed and affirm.

On November 19, 2014, Appellant was charged with homicide, aggravated assault, and carrying an unlicensed firearm.  The following events precipitated the filing of those charges.  On the day in question, Altoona Police Officers Cornell Thompson and Erik Stirk were dispatched to Appellant's residence on Fifth Avenue, Altoona, to investigate a woman, who was Appellant, standing outside covered in blood.  While *en route*, Officers Thompson and Stirk were informed that Appellant was not the victim, but,

_____
* Retired Senior Judge assigned to the Superior Court.

instead, that the victim, Appellant's mother Barbara Elias, was inside. Appellant's daughter allowed the officers inside the residence, where they discovered Ms. Elias seated on a couch. She had blood on her face and neck, and skull fragments and brain matter were located on the couch behind Ms. Elias. The victim died from gunshot wounds to the back of the head and neck.

Appellant agreed to go to the police station for an interview. After being given and waiving her *Miranda* rights in writing, Appellant claimed that her mother was harassing her, so she left the house, ran some errands, and returned to find her mother dead. Appellant asked to go outside the police station in order to smoke a cigarette and talk with her girlfriend, Amy Smith.

Detective Nichole Douglas accompanied Appellant outside, and Detective Douglas began to smoke a cigarette about six feet away from the two other women. Appellant started hugging Ms. Smith and spontaneously uttered, "I did it, I f__ing did it. Okay? " N.T. Suppression Hearing, 8/25/15, at 50. Ms. Smith motioned for Detective Douglas to come closer, and, when the detective was about two feet away, Appellant said to Ms. Smith that "she couldn't take it anymore and said that she had hid the gun and said she did it." *Id*. at 51. Ms. Smith asked Appellant, "Why did you let it get this bad? Why didn't you talk to me about it?" *Id*. Appellant responded, "I tried. It was either me or her." *Id*. Appellant then told Detective Douglas that she

"wanted to come clean. She said she had all intentions[, after talking to Ms. Smith,] of telling the truth." *Id*. at 52.

Detective Douglas led Appellant back into the police station, where Appellant again received and waived her *Miranda* rights. At that point, Appellant confessed to shooting her mother and contended that her mother was poisoning her. Appellant stated that she used a gun that she kept in her bedroom drawer to shoot Ms. Elias, ran errands, returned home, and called 911. During the execution of a search warrant, police recovered a .32 caliber revolver from Appellant's car.

Appellant filed notice of intent to pursue an insanity defense. Appellant was appointed an expert witness, Dr. Joseph Silverman, who indicated that Appellant suffered from a mental infirmity. The Commonwealth successfully sought permission to allow its own mental health expert, Dr. Wayne D'Agaro, to evaluate Appellant. Appellant then filed a pretrial motion to suppress her inculpatory statements. That motion was denied following two days of hearings.

On January 13, 2016, Appellant entered a guilty plea to third degree murder. She proceeded to sentencing on March 18, 2016, where the sentencing court had the benefit of a pre-sentence report. Dr. Silverman and Dr. D'Agaro testified. Dr. Silverman maintained that Appellant's delusional beliefs could be treated and that she could return to be a productive member of society. Dr. D'Agaro opined that there was no

guarantee either that any treatment of Appellant's disorder would be effective or that she would not be violent in the future. The Commonwealth adduced that Appellant had thirteen prison misconducts, some of which included violent behavior.

The matter was continued to a second sentencing hearing on April 11, 2016. The court heard closing remarks, and then recessed to examine the pre-sentence report in the context of those remarks and to review various exhibits introduced at sentencing. After offering a lengthy explanation for its sentencing decision, the trial court imposed a standard-range sentence of eighteen to forty years in jail. Appellant filed a motion to modify her sentence, which was denied. This appeal followed. Appellant alleges the following:

> 1. Whether the sentencing court committed an abuse of discretion by failing to incorporate Ms. Stephenson's delusional beliefs in its analysis of the nature of her actions?
>
> 2. Whether the sentencing court committed an abuse of discretion by sentencing Ms. Stephenson to eighteen to forty years' incarceration without considering her rehabilitative needs?

Appellant's brief at vi.

As we observed in **Commonwealth v. McLaine**, 150 A.3d 70, 76 (Pa.Super. 2016) (citation omitted), "[a]n appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right." Instead, to invoke our jurisdiction involving a challenge to the discretionary aspects of a sentence, an appellant must satisfy the following four-part test:

(1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id**.

Instantly, Appellant filed a timely appeal, and preserved her contentions in her motion for reconsideration of sentence. Additionally, her brief contains a Pa.R.A.P. 2119(f) statement. Appellant maintains that the sentencing court "failed to consider [Appellant's] individual circumstances, and to take her rehabilitative needs into account when fashioning her sentence." Appellant's brief at xi. That statement continues, "Specifically, Appellant believes the trial court misapplied the import of her delusional disorder, and in effect, disregarded it in its entirety, without justification or explanation." **Id**. (emphasis added). An allegation that the court did not consider a defendant's rehabilitative needs raises a substantial question. **Commonwealth v. Downing**, 990 A.2d 788, 793 (Pa.Super. 2010).[1]

---

[1] We acknowledge that the Superior Court has issued conflicting decisions as to what constitutes a substantial question, including whether a substantial question is raised when the defendant claims that the court did not consider mitigating factors. **See Commonwealth. v. Dodge,** 77 A.3d 1263, 1272 n.8 (Pa.Super. 2013) (*en banc*).

Accordingly, Appellant has presented a substantial question, and we will address the merits of her claim on appeal. We note that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***McLaine***, ***supra*** at 75–76.

The seminal case setting forth the parameters of the Superior Court's review of a sentence is ***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007). The ***Walls*** Court stressed the deferential nature of our examination of any sentence, stating that the "sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Id***. at 961 (citation and quotation marks omitted). Our Supreme Court noted that this Court's ability to review a sentence is constrained by 42 Pa.C.S. § 9781(c). That statute provides that we can vacate a sentence and remand for re-sentencing only if we find: 1) that the court intended to sentence within the guidelines but "applied the guidelines erroneously;" 2) a sentence was

imposed within the guidelines "but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or 3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id*.

Since the present sentence was within the guidelines, we can reverse only if application of the guidelines was clearly unreasonable. While the statute does not contain a definition of what renders a sentence unreasonable, the **Walls** Court filled in that gap, stating: "'unreasonable' commonly connotes a decision that is 'irrational' or not guided by sound judgment." *Id*. at 963. Additionally, § 9781(d) of the Sentencing Code provides that when we review the record, we must have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Based upon the state of the record, we must reject Appellant's claim that the court did not take into account her delusional disorder when it imposed its sentence. Evidence was presented to the court about

Appellant's mental health issues during a sentencing hearing that spanned two days. The sentencing court specifically adjourned to re-consider the pre-sentence report in light of defense counsel's argument, which included extensive discussion of Appellant's mental health, delusional beliefs, and psychosis. N.T. Sentencing Hearing, 4/11/16, at 17-18, 20, 21, 22, 25.

Under the circumstances, we are required to reject the premise that the trial court did not properly factor Appellant's delusional beliefs into its sentencing decision. *Commonwealth v. Macias*, 968 A.2d 773 (Pa.Super. 2009). Our Supreme Court has articulated that if "it can be demonstrated that the judge had any degree of awareness of the sentencing considerations," the appellate courts must "presume . . . that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *accord Commonwealth v. Ventura,* 975 A.2d 1128, 1135 (Pa.Super. 2009) (relying upon *Devers* and stating "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed").

Herein, the sentencing court was cognizant of all the facts that Appellant now relies upon in mitigation of her sentence. Appellant's position is nothing more than a complaint about how the sentencing court weighed

her mental health problems. The trial court offered extensive reasons for the sentence imposed. N.T. Sentencing Hearing, 4/11/16, at 28-35. Its discussion included an examination of Appellant's psychosis and delusional beliefs. *Id*. at 31-32. It credited the testimony of Dr. D'Agaro and decided that a sentence of eighteen to forty years was necessary for the protection of the public.

Thus, it is clear that the court, contrary to Appellant's first position, did incorporate her delusional beliefs into its sentencing equation. It merely refused to conclude that her mental health issues warranted a mitigated range sentence of six years in jail, as requested by Appellant. This Court does not have the authority to assign a different weight to a sentencing factor, which is what Appellant is requesting this Court to do. *Macias*, *supra*.

We also must reject Appellant's second averment, which is that the sentencing court did not consider her rehabilitative needs. Since the court had the benefit of a pre-sentence report, we are required to presume that her rehabilitative needs were considered. *Devers*, *supra*; *Ventura*, *supra*. The fact remains that there was conflicting evidence as to whether Appellant was capable of being rehabilitated, and the sentencing court was not required to accept Dr. Silverman's opinion on the subject.

We now engage in the analysis required by 42 Pa.C.S. § 9781(d) and *Walls*. Given the egregious nature of the offense, the findings of the court,

its opportunity to view Appellant, and the fact that this sentence was in the standard range, we cannot characterize the sentence as clearly irrational or clearly unguided by sound judgment. Hence, we are compelled to affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2017