J-S34039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HERNAN HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 1360 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000387-2023

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: November 5, 2024**

Appellant, Hernan Hernandez, appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County on September 29, 2023. We affirm.

The relevant facts and procedural history are as follows:

The charges arose from an incident that occurred in the evening of April 19th, 2022, when Appellant and two co-conspirators entered the victim's home while wearing masks. Co-conspirator Luis Daniel Hernandez brought a shotgun to the home invasion and shot the victim, Omar Ramos, in the arm. The victim lost part of his bicep as a result of the gunshot. *Sentencing Transcript, p. 11, 9/29/2023*. Appellant, co-conspirator Wilfredo Delgado Rodriguez, and co-conspirator Luis Daniel Hernandez stole jewelry and/or marijuana from the victim. *Amended Information*, July 11, 2023.

Appellant was charged with the following:
Count 1: Criminal Conspiracy/Robbery, 18 Pa.C.S.A. §903 (a)(1);

_____

[*] Former Justice specially assigned to the Superior Court.

Count 2: Criminal Conspiracy/Burglary, 18 Pa.C.S[.]A. §903 (a)(1);
Count 3: Theft by Unlawful Taking, 18 Pa.C.S.A. §3921(a);
Count 4: Receiving Stolen Property, 18 Pa.C.S.A. §3925(a);
Count 5: Robbery (inflict serious bodily injury), 18 Pa.C.S.A. §3701(a)(1)(i); and
Count 6: Burglary, 18 Pa.C.S.A. §3502(a)(2).
*Amended Information*, July 11, 2023.

After a jury trial, Appellant was found guilty of Counts 1, 2, 5, and 6. Counts 3 and 4 were withdrawn by the Commonwealth. Appellant was sentenced in the standard range of the guidelines by the Honorable Judge Ernest J. DiSantis, Jr. (now retired), as follows:
Count 1: Criminal Conspiracy to Commit Robbery: 80 to 160 months of incarceration
Count 2: Criminal Conspiracy to Commit Burglary: merged with Count 1;
Count 5: Robbery ([inflict serious bodily injury]): 72 to 144 months of incarceration consecutive to Count 1;
Count 6: Burglary: 50 to 100 months of incarceration concurrent with Count 1.
. . .
Co-conspirator Luis Daniel Hernandez was sentenced at Docket Number 1866 of 2022 by the Honorable Judge David Ridge to a total of 51 to 102 months of incarceration pursuant to a negotiated plea. Hernandez pled guilty to Robbery (serious bodily Injury), 18 Pa.C.S.A. §3701(a)(1)(i). A deadly weapon enhancement was applied. *Court Exhibit "A."*

Co-conspirator Wilfredo Delgado Rodriguez was sentenced at Docket Number 1531 of 2022 by the Honorable Judge John J. Mead to four years of probation for one count of Theft by Unlawful Taking, 18 Pa.C.S.A. §3921(a). *Court Exhibit "B."* Five other counts were *nolle prossed* by the prosecution. Wilfredo Delgado Rodriguez was a cooperating witness for the prosecution in Appellant's case. (*Sentencing Transcript, p. 5, September 23, 2023*).

Tr. Ct. Op. at 1-3.

A pre-sentence investigative report was prepared for Appellant and Luis

Hernandez. A pre-sentence investigative report was not prepared for Wilfredo

Delgado-Rodriguez. On October 17, 2023, Appellant filed a Motion to Reconsider Sentence. The Motion was denied by Order of October 17, 2023. Appellant timely filed a Notice of Appeal on November 16, 2023, and a 1925(b) Statement of Matters Complained of on Appeal on December 6, 2023. The Honorable Peter J. Sala filed an opinion pursuant to 1925(a) on January 9, 2024. This appeal follows.

Appellant raises two questions for our review:

1. Did the trial court commit an abuse of discretion when it sentenced Appellant to a sentence that was manifestly disproportionate to that of his co-defendants?

2. Did the trial court err when it ordered Appellant to pay all of the lab fees requested by the Commonwealth at sentencing where the Commonwealth failed to demonstrate that some of the expenses were necessary to Appellant prosecution?

Appellant's Br. at 8.

Appellant's first issue challenges the discretionary aspects of his sentence. As we have observed, "[a]n appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right." *Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016) (citation omitted). Instead, to invoke our jurisdiction involving a challenge to the discretionary aspects of a sentence, an appellant must satisfy the following four-part test:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

- 3 -

substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*.

Here, the Appellant filed a timely appeal and preserved his discretionary aspects of sentencing contentions in a post-sentence motion and in his Pa.R.A.P. 1925(b) statement. Additionally, he presented a Pa.R.A.P. 2119(f) statement in its brief. **See** Appellant's Br. at 21. Appellant asserts that his sentence was significantly higher than that of his co-defendants and that the disparity between the sentences imposed on each of them touches upon the fundamental norms that underlie the sentencing process. **Id**. Appellant raises a substantial question by alleging an unexplained disparity between his sentence and that of a co-defendant. **See Commonwealth v. Canfield**, 639 A.2d 46, 49 (1994) (substantial question presented because "a disparity between sentences imposed upon co-defendants does touch upon the fundamental norms which underlie the sentencing process"). We thus find that Appellant has properly invoked our jurisdiction, and we will address the merits of the Appellant's issues on appeal. We note that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the

defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*McLaine, supra* at 75-76.

Appellant concedes that his two co-defendants were sentenced pursuant to negotiated plea deals, and one of them even testified as a cooperating witness. Appellant, on the other hand, proceeded to trial. Appellant further concedes that he and his co-defendants were sentenced by different trial court judges. Appellant's Br. at 25. Appellant also concedes that his sentence was within the standard range of the guidelines. *Id.* at 22. Nonetheless, he argues that nothing about the seriousness of the offenses distinguish him from his co-defendants, and the disparity between their sentences unduly suggests that he is more culpable than the others. Appellant's Br. at 27.

Initially, we note that we have observed that a co-conspirator "who has successfully negotiated a plea deal and a defendant sentenced after a jury trial . . . are not similarly situated for sentencing purposes." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). Hence, "a disparity in sentencing between a defendant sentenced after a trial and a co-[actor] sentenced pursuant to a negotiated plea deal does not demonstrate the trial court penalized the defendant for exercising his right to a jury trial." *Id.*

Furthermore, a defendant is not entitled to the same sentence as that imposed on another person involved in the same crime. *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010). Generally, "when there

is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences." ***Id.*** (quotation marks and quotation omitted). However, when a defendant's co-conspirators appear before a different sentencing judge than the defendant, the requirement to explain the alleged disparity is obviated, and the fact that the defendant received a greater sentence than that of his co-conspirators does not form a basis for appellate review. ***See Commonwealth v. Szczesniewski***, 591 A.2d 1055, 1057 (Pa. Super. 1991) (stating "appellant and his accomplices appeared before different judges for sentencing. Therefore, [appellant's sentencing judge] was not required to explain the alleged disparity in sentencing.").

Here, the Honorable Ernest J. DiSantis, Jr. sentenced Appellant after trial to an aggregate of 152 months' to 304 months' incarceration. The Honorable David Ridge sentenced Appellant's co-defendant, Luis Hernandez, to an aggregate of fifty-one (51) months' to 102 months' incarceration pursuant to a plea deal. The Honorable John J. Mead sentenced Appellant's co-defendant, Wilfredo Delgado-Rodriguez, to four years of probation pursuant to a plea deal. Because Appellant and his accomplices appeared before different judges for sentencing, Judge DiSantis was not required to explain any alleged disparity in sentencing.

Moreover, we find that Judge DiSantis placed adequate reasons on the record for Appellant's sentence. The sentencing transcript reveals Judge DiSantis' reasoning:

> Obviously, we can't minimize what happened here. This was a strong-armed robbery. A shotgun was used. The victim was seriously injured and by the grace of God wasn't killed, otherwise we'd be here on a homicide charge. And so the fact that he's able to recover is very positive.
>
> But I can appreciate the seriousness [sic] this offense. It was a violent offense. And what was going through your mind and your co-defendants' minds at the time is just beyond me. And to walk into his house with a shotgun, I mean it just boggles the mind because this was exactly what can happen.
>
> You do have a criminal record. You have a prior criminal record for violence, but I do understand that it's over 20 years old. Although your most recent offense occurred after these offenses, so I'm not considering those, but your old offenses, I think in Massachusetts, were old. And you were quite a bit younger at the time, so I'm giving them weight but not – I'm giving the fact that they were when you were quite a young man, over 20 years ago.
>
> As you stand in front of me today, you sound like you're an articulate man. I take you at your word that you have some spirituality and some religious foundation because you've talked about putting it in God's hands. And I'll take — I'll still take you at your word and I find that you are sincere.
> . . .
> And that's a good sign because I think that it goes to your rehabilitative potential, but obviously you've got to pay the price for what you did.

N.T., 9/29/23, at 12-13.

The sentencing judge adequately stated on the record the reasons for Appellant's standard-range sentence. Additionally, "[w]hen a sentencing court has reviewed a presentence investigation report, we presume that the court

J-S34039-24

properly considered and weighed all relevant factors in fashioning the defendant's sentence." **Commonwealth v. Baker**, 72 A.3d 652, 663 (Pa. Super. 2013) (citation omitted). Accordingly, the trial court did not abuse its discretion in sentencing Appellant.

Appellant's second claim is that trial court erred when it ordered Appellant to pay all of the lab fees requested by the Commonwealth at sentencing. Although Appellant did not include this issue in his 1925(b) statement and thus neither the trial court nor the Commonwealth addressed it, a challenge to the trial court's authority to impose costs implicates the legality of sentence and thus is not waived. **Commonwealth v. Lehman**, 201 A.3d 1279, 1283 (Pa. Super. 2019). Our standard of review is *de novo* and our scope of review is plenary. **Id**. The Commonwealth bears the burden of proving that the expenses were necessary and in connection with the prosecution of the offense or offenses of which the defendant was found guilty. **Commonwealth v. Garzone**, 993 A.2d 1245, 1259 (Pa. Super. 2010).

The statute governing the imposition of lab fees provides that a person convicted of a violation of the Controlled Substance, Drug, Device and Cosmetic Act shall pay costs in cases where laboratory services were required to prosecute the crime:

> **(a) Imposition.--**A person . . . who is convicted of . . . a crime as defined in 18 Pa.C.S. § 106 (relating to classes of offenses) . . . . shall, in addition to any fines, penalties or costs, in every case where laboratory services were required to prosecute the crime or violation, be sentenced to pay a criminal laboratory or paramedic user fee which shall include, but not be limited to, the cost of

- 8 -

sending a laboratory technician or paramedic to court proceedings.

42 Pa.C.S.A. § 1725.3(a). The statute further governs the amount of the user fee:

**(b) Amount of user fee.—**

(2) If a Pennsylvania State Police laboratory has provided services in the prosecution, the director or similar officer of the Pennsylvania State Police laboratory shall determine the actual cost of the laboratory services provided in the prosecution and transmit a statement for services rendered to the court.

42 Pa.C.S.A. § 1725.3(b)(2).

Here, Appellant was ordered to pay the costs of $1131.00 for serology, two separate bills in the amounts of $645.00 and $4565.00 for DNA testing, $162.00 for firearm functionality testing, and $680.00 for drug identification testing. N.T., 9/23/23, at 14. Appellant argues that the plain language of this statute requires that an individual convicted of a violation of the drug act pay the lab fee required for that prosecution, and that the police lab submit a report of the actual cost associated with that prosecution. Appellant's Br. at 29. Appellant submits that while the serology and DNA testing were certainly necessary to Appellant's prosecution, the Commonwealth failed to prove that the firearm and drug testing were necessary to the prosecution when Appellant was not charged with or convicted of possessing the specific firearm or possessing the types of drugs tested for, and where the firearm and controlled substances were not used as evidence against him. Appellant's Br. at 30.

A review of the certified record reveals the lab reports stating the actual cost associated with the tests. **See** *PSI Report*. While Appellant is correct that he was not charged with possession of the drugs for which the lab tested, he was charged with and convicted of criminal conspiracy to commit robbery and robbery, which requires, relevantly, inflicting serious bodily injury upon another while committing a theft.[1] A firearm was used in the robbery and the object of the theft was drugs. N.T., 7/11/23, at 50, 54, 68. Thus, consistent with section 1725.3, Appellant could be ordered to pay laboratory costs associated with investigation of the conspiracy, including testing of firearms and the drugs, and the DNA recovered from the scene.

Therefore, Appellant's sentence is legal because the sentencing court possessed the authority to impose upon Appellant all costs associated with the investigation of the conspiracy of which he was convicted, and the lab reports submitted support the actual costs Appellant was ordered to pay. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(i).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/5/2024