J-S36027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PATRICK USANGA, | |
| Appellant | No. 2349 EDA 2015 |

Appeal from the Judgment of Sentence of May 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-00009710-2013

BEFORE: PANELLA, J. OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 16, 2017**

Appellant, Patrick Usanga, appeals from the judgment of sentence entered on May 20, 2015, as made final by the denial of his post-sentence motion on July 8, 2015. We affirm.

The trial court accurately summarized the factual background of this case as follows:

> [Appellant], a Nigerian-born United States citizen[,] obtained a medical degree from the University of Guadalajara in Mexico in 1982. He took the board examination to be a licensed medical doctor in Pennsylvania several times in the 1980s and [19]90s, but did not pass. On May 19, 2009, he filed the necessary paperwork to incorporate a health care facility, Northeast Behavioral Medicine, Inc., with himself as the sole officer of the corporation. . . . He applied for and received a license to operate a psychiatric clinic soon after incorporation. At all times during the period of time Northeast Behavioral Medicine was in business and seeing patients, the Appellant was the only provider at the facility.

During that period he saw patients for various mental health and substance abuse issues. Several of his former patients testified that he told them that he was either a psychologist or a psychiatrist. As a result of the services provided by the Appellant, he billed various insurance companies, including Aetna and Blue Cross[,] for his services. For most of the invoices, Appellant billed a code, 90808, based on the Current Procedure Terminology manual ("CPT") which is used by all medical insurance companies. The code that Appellant used relates to a psychological office visit for 75 to 80 minutes. Appellant also used several other codes that relate to other psychological and psychotherapy treatments. Appellant never had a valid license to perform the services for which he was billing Aetna and Blue Cross. From December 19, 201[0] through May 15, 2011, Appellant billed Aetna $24,950[.00] and received $5,036.38 as an out[-]of[-]network provider. Blue Cross paid a total of $15,763.84 to Appellant. That money was deposited in a TD Bank account owned by the Appellant.

On November 29, 2011, the Pennsylvania Department of Public Welfare ("DPW") conducted an annual field investigation of Northeast Behavioral Medicine. Following that visit, DPW sent Appellant a letter on December 14, 2011 stating that his facility did not meet the criteria to operate a psychiatric clinic. Notably[,] it lacked a minimum of 16 hours of psychiatric time by a licensed psychiatrist and did not employ four full time mental health professionals. Appellant was given until January 6, 2012 to submit a [p]lan of [c]orrection. He submitted a timely [p]lan of [c]orrection, however DPW found that the plan was unacceptable and told him he had ten days to correct his plan in accordance with 55 Pa. Code § 5200.22. Appellant failed to satisfy this requirement as well. On March 13, 2012, a DPW employee made an unannounced field visit to Appellant's office where it was closed and the doors were locked. DPW then sent Appellant a letter . . . stating that due to Appellant's failure to conform to the requirements listed, his license to operate a psychiatric clinic was revoked.

Concurrently to the period of time that Appellant was operating Northeast Behavioral Medicine, he was also collecting unemployment compensation and Social Security disability benefits. Appellant collected unemployment benefits starting on March 14, 2009 and continuing until January 29, 2011. Specifically he collected $54,684[.00] from the period

immediately after he incorporated Northeast Behavioral Medicine on May 19, 2009 until the termination of his benefits. The Appellant was not entitled to unemployment benefits once he incorporated his business and became self-employed. The Pennsylvania Department of Labor determined that the Appellant was paid $52,000[.00] in unemployment compensation that he was not entitled to receive.

Additionally, Appellant filed for disability benefits from the Social Security Administration in April 2012. Appellant claimed he was disabled and unable to work from April 2011 through October 2012. He received 32 checks [totaling] $16,108[.00]. The Social Security Administration determined that he was not entitled to the full amount that was paid to him during that time because he was working during that period of time, he was not truthful on his application regarding whether he was married, and he did not disclose that he was also receiving unemployment compensation during that period.

Trial Court Opinion, 8/22/16, at 2-5 (internal citations and certain internal quotation marks omitted; certain paragraph breaks added).

The procedural history of this case is as follows. On August 15, 2013, the Commonwealth charged Appellant via criminal information with 27 counts of insurance fraud,[1] 11 counts of tampering with public records,[2] four counts of theft by deception,[3] two counts of attempted theft,[4] two counts of harassment,[5] and making a false statement regarding an unemployment

---

[1] 18 Pa.C.S.A. § 4117(a)(2), (a)(6).

[2] 18 Pa.C.S.A. § 4911(a)(1).

[3] 18 Pa.C.S.A. § 3922(a)(1).

[4] 18 Pa.C.S.A. §§ 901, 3922.

[5] 18 Pa.C.S.A. § 2709(a)(2), (a)(3).

compensation claim.[6]  Appellant subsequently moved to sever the harassment counts and the trial court denied the severance motion on March 13, 2015.

On March 16, 2015, trial commenced with Appellant present.  On March 23, 2015, Appellant failed to appear for the fifth day of trial and trial continued in his absence.  On March 26, 2015, Appellant was convicted of 23 counts of insurance fraud, eight counts of tampering with public records, four counts of theft by deception, and making a false statement regarding an unemployment compensation claim.[7]

On May 20, 2015, Appellant was sentenced to an aggregate term of 6 to 12 years' imprisonment followed by five years' probation.[8]  On May 28, 2015, Appellant filed a post-sentence motion which was denied on July 8, 2015.  This timely appeal followed.[9]

---

[6] 43 P.S. § 871.

[7] The trial court found Appellant guilty of making a false statement regarding an unemployment compensation claim while the jury found Appellant guilty on the remaining counts.

[8] The trial court ordered Appellant's sentences of 30 to 60 months' imprisonment on one insurance fraud count, 42 to 84 months' imprisonment on one theft by deception count, and five years' probation on one tampering with public records count to run consecutively.  Each sentence for the remaining 33 convictions was ordered to run concurrently with one of those three sentences previously described.

[9] On May 19, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement").  **See** Pa.R.A.P. 1925(b).  On June 24, 2016, Appellant filed his concise statement.
*(Footnote Continued Next Page)*

Appellant raises four issues for our review:

1. Did the [trial] court err in denying Appellant's motion to sever the charge[s] of [h]arassment . . . ?

2. Did the [trial] court err by denying Appellant's motion for a mistrial where the Commonwealth twice referenced Appellant's post-arrest silence?

3. Did the [trial] court err by admitting into evidence documents that the Commonwealth failed to properly authenticate?

4. Did the [trial] court err by imposing terms of incarceration well in excess of the guidelines without offering a basis for doing so?

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court erred in failing to sever the harassment charges. We review a trial court's decision to deny a severance motion for an abuse of discretion. ***Commonwealth v. Richard***, 150 A.3d 504, 509 (Pa. Super. 2016) (citation omitted). Severance of offenses charged in a single criminal information is governed by Pennsylvania Rule of Criminal Procedure 583,[10] which provides that, "The court may order separate trials of offenses or defendants, or provide other

_(Footnote Continued)_ ────────────

On August 22, 2016, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

[10] Appellant argues that his severance motion was governed by Pennsylvania Rule of Criminal Procedure 582. This is incorrect. Rule 582 addresses situations in which the Commonwealth charges a defendant with offenses in multiple criminal informations and then seeks to consolidate the informations for trial.

appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

> When considering a motion to sever, the trial court must determine
>
> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Jordan***, 65 A.3d 318, 328 n.2 (Pa. 2013) (citation omitted).

The evidence regarding the harassment charges would have been admissible in Appellant's trial for the economic crimes. The harassment charges arose from Appellant's alleged touching of a patient's foot and making sexually suggestive comments during an appointment. This evidence tended to prove that Appellant failed to render the medical services to that patient for which he billed her insurance company. Thus, it was relevant with respect to one of the insurance fraud charges. Second, the evidence was capable of separation by the jury. The jury's inability to reach a verdict on one of the harassment charges[11] suggests that it was able (and did) distinguish between whether Appellant's conduct constituted harassment and whether he provided the services for which he billed the patient's insurance company. Third, Appellant did not face any undue

---

[11] The trial court found Appellant not guilty of the other harassment charge.

prejudice as a result of consolidation of the offenses. The testimony regarding the harassment charges was a tiny portion of a trial that lasted over a week and the Commonwealth did not focus on that charge. Instead, the focus of the Commonwealth's case was Appellant's economic crimes. Accordingly, we conclude that the trial court did not abuse its discretion by denying Appellant's severance motion.

In his second issue, Appellant argues that the trial court erred in denying his motion for a mistrial. "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013) (internal alteration and citation omitted). We review a trial court's denial a motion for mistrial for an abuse of discretion. *Commonwealth v. Smith*, 131 A.3d 467, 474 (Pa. 2015) (citation omitted).

During the Commonwealth's case-in-chief, it called two individuals involved in the investigation of Appellant's crimes. Syreeta Scott ("Scott") testified that the United States Department of Labor "attempted to interview [Appellant] when [it executed a] search warrant at his home and arrested him, but he did not want to be interviewed." N.T., 3/18/15, at 77. Similarly, Luke Heller ("Heller") testified that the Pennsylvania Department of Labor and Industry mailed Appellant a questionnaire and attempted to

reach him by telephone; however, Appellant did not respond to the questionnaire nor did he agree to speak over the telephone. N.T., 3/19/15, at 18.

Appellant argues that these statements were impermissible references to his post-arrest silence. He therefore argues that the Commonwealth violated his Fifth Amendment right to remain silent. Preliminarily, we must determine whether Appellant preserved this claim for appellate review. In order to preserve a claim that the trial court erred in admitting evidence at trial, a party must make a contemporaneous objection thereto setting forth the grounds of the objection unless the grounds are apparent from the context. *See* Pa.R.Evid. 103(a); *Commonwealth v. Walter*, 119 A.3d 255, 264 (Pa. 2015). In this case, Appellant did not object to Heller's testimony until after his testimony was complete. *See* N.T., 3/19/15, at 48. The objection was too late to preserve this claim of error as it relates to Heller's statement. *See Commonwealth v. Parker*, 847 A.2d 745, 749 (Pa. Super. 2004) (citation omitted). Appellant did, however, preserve his claim of error with respect to Scott's testimony as he contemporaneously objected to her statement. N.T., 3/18/15, at 77. Thus, we proceed to consider the merits of Appellant's claim of error as it relates to Scott's testimony.

We conclude that even if Scott's testimony was an impermissible reference to Appellant's post-arrest silence, the curative instruction given by

the trial court was able to cure any prejudice that resulted therefrom. As this Court has explained:

> If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions. To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instructions. If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial.

***Commonwealth v. Moury***, 992 A.2d 162, 176 (Pa. Super. 2010) (internal citations, quotation marks, and footnote omitted).

In this case, Scott's reference to Appellant's post-arrest silence was brief and fleeting. Scott's answer was in response to the Commonwealth's question of, "Why did you determine your los[s] date from March, the inception of the application?" N.T., 3/18/15, at 76. This question was not meant to elicit a response regarding Appellant's post-arrest silence. Instead, Scott merely explained the process she followed to determine the appropriate loss date. That process includes interviewing the suspect; however, as Appellant was unwilling to speak to Scott, she had to make a determination without the benefit of such an interview. The Commonwealth did not exploit Appellant's post-arrest silence. It did not continue questioning Scott about the subject. Finally, the trial court gave a complete curative instruction immediately after Scott's reference to Appellant's post-

arrest silence. N.T., 3/18/15, at 77-78. Thus, all four factors weigh in favor of finding that the trial court's instruction cured any prejudice Appellant may have suffered as a result of Scott's statement. Therefore, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

In his third issue, Appellant argues that the trial court erred in admitting documents that were not properly authenticated. "[Q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Windslowe*, 158 A.3d 698, 712–713 (Pa. Super. 2017) (citation omitted).

Pennsylvania Rule of Evidence 901 provides that, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.Evid. 901(a). Appellant contends that the individuals who authenticated five exhibits did not "create[] the exhibit[s] or ha[ve] any direct knowledge of the creation of the exhibit[s]." Appellant's Brief at 21. Thus, according to Appellant, the trial court erred in admitting those five exhibits.

Exhibit 5 is a spreadsheet containing payments that Aetna made to Northeast Behavioral Medicine along with the patients for whom those

payments were made. This spreadsheet was properly authenticated pursuant to Pennsylvania Rule of Evidence 901(b)(1), which provides that an exhibit may be authenticated through "testimony that an item is what it is claimed to be." Pa.R.Evid. 901(b)(1). Garrett Shohan ("Shohan"), an Aetna employee, testified that he was "familiar with how records regarding claims are kept" by Aetna. N.T., 3/17/15, at 97. Shohan then testified that Exhibit 5 is a spreadsheet containing payments that Aetna made to Northeast Behavioral Medicine along with the patients for whom those payments were made. *Id.* at 98. As Shohan was an Aetna employee familiar with the record keeping process, his testimony was sufficient to authenticate Exhibit 5.

Exhibit 9 is comprised of several claim forms that Northeast Behavioral Medicine submitted to Aetna. Exhibit 9 was also authenticated pursuant to Rule 901(a)(1). As noted above, Shohan testified that he was familiar with Aetna's record keeping process with respect to claims. *Id.* at 97. He also testified that he was "familiar with Aetna's health insurance claim forms[.]" *Id.* He then testified that Exhibit 9 was a group of claim forms that Northeast Behavioral Medicine filed with Aetna. Detective Karl Supperer testified that an Aetna employee gave him the claim forms. *Id.* at 135-136. Therefore, Exhibit 9 was properly authenticated.

Exhibit 10 is comprised of several claim forms that Northeast Behavioral Medicine submitted to Blue Cross. Exhibit 10 was properly

authenticated pursuant to Rule 901(a)(1). Robert Climaldi ("Climaldi"), a Blue Cross Employee, testified that he personally "access[ed] the medical claim forms submitted to Blue Cross from Northeast Behavioral Medicine." N.T., 3/19/15, at 112. Climaldi also testified that Exhibit 10 was a copy of the claims forms he accessed on Blue Cross' computers. *Id.* Detective Karl Supperer testified that a Blue Cross employee gave him the claim forms. N.T., 3/17/15, at 143. Therefore, Exhibit 10 was properly authenticated.

Exhibit 17-A is a computer printout of answers that Appellant gave using an automated telephone system in order to receive unemployment compensation. Exhibit 18 includes extended benefits claim forms that Appellant submitted to the Pennsylvania Department of Labor. Exhibits 17-A and 18 were properly authenticated pursuant to Rule 901(b)(10), which provides that "[a]ny method of authentication or identification allowed by a statute" satisfies the requirement of Rule 901(a). Pa.R.Evid. 901(b)(10). The Judicial Code provides that, "Whenever provision is made by law for recording or filing in a public office any document, the record thereof made, and exemplifications of the document lawfully certified, shall be legal evidence in all matters in which the document would be competent evidence." 42 Pa.C.S.A. § 6106. As a provision of law provides for the filing of unemployment compensation claim forms in a public office, the record thereof is automatically authenticated pursuant to section 6106. *Cf.* 43 P.S. § 753(w)(1) (defining a valid application for benefits); *Hanna v.*

***Unemployment Comp. Bd. of Review***, 2015 WL 5458604, *1 (Pa. Cmwlth. July 8, 2015) (explaining that one way of filing claims is through the telephone system used by Appellant). Therefore, the trial court did not error in admitting Exhibits 17-A and 18 into evidence and Appellant is not entitled to relief on his third claim of error.

In his final issue, Appellant argues that the trial court imposed an excessive sentence with respect to the theft by deception and insurance fraud convictions.[12] This argument challenges the discretionary aspects of his sentence. ***See Commonwealth v. Rhoades***, 8 A.3d 912, 915 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011) (citation omitted). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. ***See*** 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. ***Id.***

As this Court has explained, in order to reach the merits of a discretionary aspects claim,

> [w]e conduct a four part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether [the] appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

---

[12] Appellant does not challenge the discretionary aspects of his tampering with public records or making a false statement regarding an unemployment compensation claim sentences.

*Commonwealth v. Popielarcheck*, 151 A.3d 1088, 1093 (Pa. Super. 2016) (citation omitted).

Appellant filed a timely notice of appeal and properly preserved the issue for our review in his post-sentence motion. Appellant's brief also contains a statement pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). We thus turn to whether the appeal presents a substantial question.

"In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Bonner*, 135 A.3d 592, 603 (Pa. Super. 2016), *appeal denied*, 145 A.3d 161 (Pa. 2016) (citation omitted). "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014) (citation omitted). In his Rule 2119(f) statement, Appellant argues that the trial court failed to adequately explain why it sentenced him outside the guidelines. "This Court has held that claims that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question." *Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted). Therefore,

Appellant presents a substantial question and we proceed to the merits of his discretionary aspects claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Solomon***, 151 A.3d 672, 677 (Pa. Super. 2016), *appeal denied*, 2017 WL 1414955 (Pa. Apr. 19, 2017) (citation omitted). In order to show an abuse of discretion, Appellant "must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015) (citation omitted); ***see also*** 42 Pa.C.S.A. § 9781(c) (providing that when a trial court sentences a defendant outside of the guidelines this Court must vacate the sentence if it is unreasonable).

Appellant stipulated to a standard sentencing guideline range of 9 to 16 months for one theft by deception charge with an aggravated range of 16 to 25 months.[13] The standard sentencing guideline range for Appellant's insurance fraud convictions was restorative sanctions to three months with

---

[13] As the trial court ordered all of Appellant's theft by deception sentences to run concurrently, we only address the sentence for that count with the highest sentencing guideline range. Similarly, as the trial court ordered all of Appellant's insurance fraud sentences to run concurrently, we only address one of those sentences.

an aggravated range of six months. *See* 204 Pa. Code §§ 303.15, 303.16(a).

> As this Court has explained:
>
> The sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only.

*Commonwealth v. McLaine*, 150 A.3d 70, 76–77 (Pa. Super. 2016), *appeal denied*, 2017 WL 1408255 (Pa. Apr. 20, 2017).

In this case the trial court had the benefit of a presentence investigation report. "Where the [trial court] had the benefit of a presentence investigation report, [we presume it] was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016), *appeal denied*, 159 A.3d 935 (Pa. 2016) (internal alteration and citation omitted).

At sentencing, the trial court explained in great detail its reasons for deviating from the sentencing guidelines applicable to Appellant's convictions for both theft by deception and insurance fraud. It stated that Appellant's offenses were "very serious matters[.]" N.T., 5/8/15, at 32. The trial continued by explaining how Appellant's failure to appear on the fifth day of

trial, although he was required to appear as a condition of his bail bond, evidenced that Appellant "still doesn't get it." *Id.* at 32-33. The trial court stated that Appellant's failure to acknowledge that he lacked a Pennsylvania physician's license and was not a counselor further proved that he still didn't get it. *Id.* at 33.

The trial court found that Appellant would continue his criminal conduct "until he's stopped." *Id.* at 34. The trial court noted that Appellant's convictions "were very serious matters. This isn't just 1, 2[, or] 3 [convictions.]" *Id.* After acknowledging the repeated pattern of criminal conduct at issue in this case, the trial court observed that, "The behavior in this case is egregious. The public has been harmed." *Id.* at 36. The trial court then explained the harm to the individual patients who believed they were being treated by a licensed doctor when they in fact were being treated by an unlicensed individual. *Id.* at 36-37. Finally, the trial court stated that:

> I'm still concerned. I'm alarmed that what I hear from [Appellant] today. He's launching into the same – first he begins by going into a tirade about why he's entitled to unemployment compensation, for crying out loud, after being found guilty of [36] counts. We still are being subjected to why he's entitled to unemployment. . . . There is no remorse. It's kind of like, well, I didn't really do anything that bad and it's a little misunderstanding. No, it's not just a misunderstanding.

*Id.* at 39-40. Therefore, the trial court deviated from the sentencing guidelines and imposed an aggregate sentence of 6 to 12 years' imprisonment followed by five years' probation.

The trial court carefully considered all of the relevant sentencing factors set forth in 42 Pa.C.S.A. § 9721(b). Appellant was convicted of dozens of serious offenses and showed no remorse after his conviction nor did he show any respect for the judicial process during trial. We conclude that the trial court's deviation from the sentencing guidelines and imposition of an aggregate sentence of 6 to 12 years' imprisonment was not unreasonable. Accordingly, the trial court did not abuse its discretion by sentencing Appellant outside of the guidelines.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2017

- 18 -