J-S52028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS VALENTINE | : | |
| | : | No. 1854 EDA 2019 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001285-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS VALENTINE | : | |
| | : | |
| Appellant | : | No. 1855 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001286-2018

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.*

MEMORANDUM BY McCAFFERY, J.:               **FILED FEBRUARY 17, 2021**

Appellant, Marcus Valentine, appeals from the judgments of sentence

entered in the Philadelphia County Court of Common Pleas, at two related

_____

* Former Justice specially assigned to the Superior Court.

dockets, following a jury trial and his convictions for robbery, possession of a firearm by a prohibited person (firearm possession), strangulation, possession of an instrument of crime (PIC), terroristic threats, and simple assault.[1] On appeal, he challenges the legality and discretionary aspects of his sentence. For the following reasons, we affirm.

Appellant and Dante Bolden (Complainant) met in the summer of 2017 and became romantically involved.[2] N.T., 11/14/18, at 40-41. At the time, Complainant occupied a second-story, one-bedroom apartment with her six-year-old daughter and 4-year-old son, M.G. *Id.* at 42, 53. Appellant moved in with Complainant and started "help[ing] out with the kids[.]"[3] *Id.* at 41. He watched the children while Complainant worked during the day. *Id.* at 42, 82. Complainant purchased a cell phone for Appellant, *id.* at 143, and gave her "EBT card" to Appellant so he could purchase food for the children. *Id.* at 62, 93.

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 6105(a)(1), 2718(a)(1), 907(a), 2706(a)(1), 2701(a), respectively. As we discuss *infra*, Appellant pleaded *nolo contendere* to firearm possession following the jury's convictions on the other counts.

[2] Appellant was known to the complainant as "Syfeer Carter." N.T. Trial, 11/13/18, at 8-11, 18, 37; N.T. Trial, 11/14/18, at 40, 72, 170, 184; *see also* Affidavit of Probable Cause, 12/7/17, at 2. However, Appellant was arrested, charged, and prosecuted under his legal name, Marcus Valentine. N.T., 11/13/18, at 14.

[3] Also, Complainant's two brothers periodically "stay[ed] there." N.T., 11/14/18, at 84-85.

We review in detail the offenses that occurred on October 4, 2017. That day, Appellant accused Complainant of acting differently and questioned her mood. N.T., 11/14/18, at 43. As the two sat next to each other in the bedroom, Appellant grabbed Complainant by the hair. *Id.* at 43-44. Complainant later testified at trial, "[Appellant] said he wasn't going to let go until I told him what was wrong with me." *Id.* at 44. After Appellant let go of her hair, Complainant fell from the bed, hitting her head on the radiator. *Id.* at 44-45, 108-09.

The two continued to argue. Complainant informed Appellant she was taking the children to their father's house. N.T., 11/14/18, at 46-47. Appellant told Complaint she "wasn't going nowhere[,]" and began hitting the Complainant "[a]nywhere he could." *Id.* at 47-48. Appellant blocked Complainant and her children from leaving and said, "I'm telling you right now[,] go back upstairs, or it's going to get ugly."[4] *Id.* at 220. Complainant refused and Appellant put his hands around Complainant's neck, choked her, and told her that she and her children "are [his] property." *Id.* at 46, 220. Complainant told her daughter to scream for help and "try to get away from him, because he wasn't going to let us out the house." *Id.* at 48.

---

[4] These statements were a part of the Affidavit of Probable Cause, read on the record at trial by Philadelphia Police Detective Mary Kuchinsky. N.T., 11/14/18, at 219-22.

The assault then continued outside. N.T., 11/14/18, at 45, 49. Complainant testified that as she started to scream, Appellant pushed her against a vehicle and again choked her. *Id.* at 49. Appellant released her only after Complainant agreed to go back into the apartment. *Id.* at 52. When Complainant attempted to walk toward the neighbor's house, Appellant grabbed her by the neck and pushed her towards the apartment building. *Id.* at 52. In defiance, Complainant sat on the front-step and said, "We not going." *Id.* at 53. Appellant responded, "Yes, you are[,]" and grabbed Complainant by the back of the neck and forced her towards the front door. *Id.* Appellant then "swiped" Complainant's 4-year-old son M.G. "out [of] the way" and opened the door. *Id.* at 53-54. M.G. fell against the brick, sustaining scratches on his back as a result. *Id.* at 54. Complainant lifted M.G.'s shirt to see his injuries, but Appellant said M.G. was fine. *Id.* at 55. Then, Complainant and Appellant entered the vestibule area of the building, and the children ran upstairs to the apartment. *Id.*

Once inside, the violence continued. Appellant choked and hit Complainant a third time. N.T., 11/14/18, at 56. According to Complainant, Appellant was "ranting that . . . he's getting tired of people doing him like this, it's not going to happen no more." *Id.* at 56. He then shoved Complainant's shirt into her mouth to stifle her screams. *Id.* at 61, 129-30. Complainant bit down on Appellant's fingers and Appellant pulled his hand from Complainant's mouth. *Id.* at 130. Complainant fell to the ground and

Appellant pulled a black gun from his waist. *Id.* at 58. He pressed the gun against Complainant's neck and said, "Now you aint going to go nowhere."[5] *Id.* at 220. Appellant then complained that "girls was doing him wrong[,]" and, "If he couldn't have [Complainant], nobody can." *Id.* at 58-59, 74.

Finally, Appellant placed the gun on the floor of the vestibule and went upstairs to retrieve his belongings.[6] N.T., 11/14/18, at 131-32. Complainant got up from the floor and told Appellant to return her keys, phones, debit card, and EBT card. *Id.* at 62, 135. Appellant responded he would leave Complainant's belongings in the mailbox. *Id.* at 60, 62, 135-36. However, after Appellant left, Complainant "checked the mailbox, and [they were not] there." *Id.* at 63. Complainant went next door to a neighbor's house and called the police. *Id.* Appellant left with Complainant's identification, debit card, food stamp card, $10 cash, and two cellphones:[7] a black iPhone 7 plus,

---

[5] These statements were a part of the Affidavit of Probable Cause, read on the record at trial by Detective Kuchinsky. N.T., 11/14/18, at 219-22.

[6] Complainant was unsure when Appellant retrieved the gun, but testified Appellant "had to [have picked up the gun] because it wasn't there no more." N.T. Trial 11/14/18, at 136-37.

[7] One of the cell phones was purchased by Complainant for Appellant. N.T. Trial, 11/14/18, at 93.

and a gold iPhone 7 plus.[8] *Id.* at 221. Appellant later withdrew $100 using Complainant's debit card. *Id.* at 66.

The next day, October 5, 2017, Complainant was interviewed by Philadelphia Police Detective Mary Kuchinsky. Detective Kuchinsky also photographed both Complainant's and M.G.'s injuries. N.T., 11/14/18, at 200. Complainant had visible scratch marks and abrasions on her throat, as well as bruising on her left-arm and elbow area. *Id.* at 201. M.G. suffered an abrasion to his back. *Id.* Detective Kuchinsky drafted an Affidavit of Probable Cause and an arrest warrant was issued for Appellant on December 7, 2017.

Almost 14 months later, Appellant was arrested on February 1, 2019. On February 22, 2019, Appellant was charged, *inter alia*, with robbery, firearm possession, strangulation, PIC, and terroristic threats at trial docket CP-51-CR-0001285-2018 (Case 1285) with respect to Complainant. Appellant was separately charged with respect to M.G. at docket CP-51-CR-0001286-2018 (Case 1286) with, *inter alia*, simple assault.

Appellant declined a plea offer. Relevant to his claims on appeal, we acknowledge the offer included a sentence of 11½ to 23 months' incarceration and 5 years' probation. *See* N.T., 11/13/18, at 27. The charges at both dockets proceeded to a consolidated jury trial on November 13, 2018. On

---

[8] These statements were a part of the Affidavit of Probable Cause, read on the record at trial by Detective Kuchinsky. N.T. Trial, 11/14/18, at 219-22.

November 16th, a jury returned guilty verdicts on the above charges. Appellant then immediately pleaded *nolo contendere* to firearm possession in a bifurcated proceeding.[9] N.T. Trial, 11/16/18, at 18. The trial court ordered a presentence and mental health evaluation, and scheduled a sentencing hearing for February 8, 2019.

At Case 1285, Appellant received consecutive sentences of: 8 to 20 years' incarceration for robbery; 5 to 10 years' incarceration for firearm possession; 4 to 10 years' incarceration for strangulation; 1½ to 5 years' incarceration for PIC; and 1½ to 5 years' incarceration for terroristic threats. Sentencing Order, 2/8/19. At Case 1286, Appellant was sentenced to 1½ to 5 years' incarceration, also to run consecutively, for the simple assault committed against M.G. Sentencing Order, 2/8/19. In sum, Appellant was sentenced to an aggregate term of 21½ to 55 years' incarceration across both dockets. Additionally, Appellant was subject to: a stay away order; anger management with supervision by the Domestic Violence Unit; random drug screens; and mandatory court costs of $756.25 and $447.25 respectively.[10]

---

[9] The parties agreed to bifurcated proceedings for the firearm possession charge. N.T., 11/13/18, at 15, 21-22. The charge would proceed only if Appellant was found guilty of PIC, because the Commonwealth alleged the criminal instrument was a handgun. **Id.** at 22.

[10] Appellant filed a *pro se* notice of appeal on February 21, 2019, later withdrawn by order of this Court on May 3, 2019. **See Commonwealth v. Valentine,** 1024 EDA 2019 (Pa. Super. May 3, 2019).

Appellant timely filed a motion to modify sentence.[11] Appellant requested the trial court give greater weight to the mitigating factors presented at sentencing, "including but not limited to his childhood, mental health, and potential for rehabilitation[.]" Appellant's Motion to Modify Sentence, 2/19/19, at 2. Furthermore, Appellant asserted the imposition of consecutive sentences "constitute[d] a legally excessive sentence." *Id.* On June 19, 2019, Appellant's post-sentence motion was denied by operation of law. Appellant then filed separate notices of appeal in each of his two dockets on June 25, 2019.[12]

Appellant was ordered to file a Pa.R.A.P. 1925(b) concise statement, which he timely filed on September 13, 2019. The trial court issued its Pa.R.A.P. 1925(a) opinion on February 19, 2020. On April 22, 2020, Appellant's application for consolidation of appeals was granted by order of this Court.

_____

[11] The 10th day after the imposition of sentence was February 18, 2019, Presidents Day. *See* Pa.R.Crim.P 720(a). The time stamp on the face of the post-sentence motion indicates that it was timely filed on February 15th. However, the corresponding trial docket entry reflects a February 19th date. Even if we were to assume this latter date was the filing date, because February 18th was a court holiday, "such day shall be omitted from the computation." Thus, the February 19th post-sentence motion was therefore timely submitted. *See* 1 Pa.C.S. § 1908.

[12] We note Appellant has thus complied with Pa.R.A.P. 341(a) and *Commonwealth v. Walker*, 185 A.3d 969, 976 (Pa. 2018), which require separate notices of appeal from a single order resolving issues spanning more than one docket.

Appellant presents two issues for our review:

1. Is the sentence on the charge of terroristic threats illegal, insofar as that sentence should have merged with the sentence for robbery?

2. Was the total sentence of twenty-one and one-half to fifty-five years incarceration manifestly excessive, unreasonable, and disproportionate to [Appellant's] conduct?

Appellant's Brief at 4.

In his first question, Appellant argues his sentence for terroristic threats is illegal because it should have merged with the sentence for robbery. Appellant's Brief at 16. He asserts the elements of terroristic threats "are completely subsumed" within robbery / threatening serious bodily injury, since "[a] threat to put someone in fear of serious bodily injury is clearly a threat to commit a crime of violence." *Id.* at 16, 18. Appellant also contends his actions constitute a single criminal act, "the pointing of the gun," and thus his case is "indistinguishable" from *Commonwealth v. Martinez*, 153 A.3d 1025 (Pa. Super. 2016). *Id.* at 18-19. Like the defendant in *Martinez*, Appellant asserts his charging documents "did not allege criminal acts that constituted terroristic threats as distinct from the conduct that constituted robbery." *Id.*

Appellant's challenge to the legality of his sentence is raised for the first time in his brief, as he did not include the challenge in his post-sentence motion nor Pa.R.A.P.1925(b) concise statement. Ordinarily, issues not raised in the trial courts cannot be raised for the first time on appeal. *See* Pa.R.A.P 302(a). Nevertheless, claims involving sentencing merger fall within the narrow class of claims challenging the legality of a sentence. *See Martinez*,

153 A.3d at 1030. Challenges to the legality of a sentence are non-waivable claims that may be raised for the first time on appeal as a matter of right. *See* 42 Pa.C.S. § 9781(a); *Martinez*, 153 A.3d at 1030 n.2. Thus, this Court has jurisdiction to review Appellant's first question.[13]

In proceeding to the merits of Appellant's first question, we are mindful of our standard of review. As stated above, a claim that crimes should have merged for sentencing purposes raises a challenge to the legality of a sentence. *Martinez*, 153 A.3d at 1030. Thus, our standard of review is *de novo* and the scope of review is plenary. *Id.*

Crimes merge for sentencing purposes only if: (1) all the statutory elements of one offense are included in the statutory elements of the other; and (2) the crimes arise from a single criminal act. 42 Pa.C.S. § 9765; *see also Commonwealth v. Baldwin,* 985 A.2d 830, 833 (Pa. 2009). Under

---

[13] Before proceeding to the merits of Appellant's first claim, we clarify a discrepancy in the record. Our careful review of the record shows Appellant was charged under 18 Pa.C.S. § 3701(a)(1)**(i)** with robbery/**infliction** of serious bodily injury. Yet in its opening and closing arguments at trial, the Commonwealth, referred to the elements of Subsection 3701(a)(1)**(ii)**, robbery/**threatening** serious bodily injury. N.T., 11/14/18, at 23-24; N.T. Trial, 11/15/18, at 41-42. Furthermore, at the charging conference, the parties agreed to instruct the jury on robbery/**threatening** serious bodily injury. N.T., 11/15/18, at 50-51. The parties also stipulated, "[S]erious bodily injury was not inflicted[.]" *Id.* at 51. As a result, the trial court instructed the jury, and responded to a jury question, stating the elements of robbery/**threatening** serious bodily injury. *Id.* at 67, 74; N.T., 11/16/18, at 9-10. The resulting guilty verdict was therefore a conviction under 18 Pa.C.S. § 3701(a)(1)**(ii)** for robbery/**threatening** serious bodily injury.

such circumstances, a court may only sentence the defendant on the higher graded offense. 42 Pa.C.S. § 9765. The merger doctrine is a rule of statutory construction, designed to determine whether the legislature intended the punishment of one offense to encompass that of another offense arising from the same criminal act. *Baldwin*, 985 A.2d at 835 (citation omitted).

In this Commonwealth, one is guilty of robbery if "in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(ii). Similarly, one commits terroristic threats if he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1).

First, we agree with Appellant that "a threat to put someone in fear of serious bodily injury is clearly a threat to commit a crime of violence." *See* Appellant's Brief at 18. This Court has previously determined "it would be championing a distinction without a difference to conclude that threatening serious bodily injury . . . was not the functional equivalent of a threat of violence intended to cause terror." *Martinez*, 153 A.3d at 1033. Thus, we agree the statutory elements of terroristic threats are subsumed by Subsection 3701(a)(1)(ii) of the robbery statute.

We must also determine whether Appellant's crimes result from the commission of a single criminal act. This Court has explained:

> When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the

chain of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth.

*Martinez*, 153 A.3d at 1030-31 (citations and quotation marks omitted).

Here, Appellant relies on *Martinez*, 153 A.3d 1025, in arguing his conduct constitutes a single criminal act because his charging documents "did not allege criminal acts that constituted terroristic threats as distinct from the conduct that constituted robbery." Appellant's Brief at 18-19. In *Martinez*, the defendant was convicted of robbery and terroristic threats. *Martinez*, 153 A.3d at 1027. Martinez approached the victim in a dark alley and asked, "[W]hat do you got?" *Id.* After the victim said he had nothing, Martinez brandished a silver revolver and pressed it to the victim's cheek. *Id.* Martinez then slammed the victim against the hood of a nearby car and searched the victim's pockets. *Id.* at 1027-28. Martinez took $50 cash and a cellular telephone, then ran away. *Id.* at 1028. On appeal, Martinez argued his sentences for robbery and terroristic threats should have merged because terroristic threats is a lesser-included offense within robbery. *Id.* at 1029. This Court agreed, and also concluded his conduct constituted a "seamless event occurring in the course of a theft." *Id.* at 1032. Critically, the Court found "neither the charging information **nor supporting documents of**

**record** describe the operative facts in such a way as to distinguish the specific conduct underlying the offenses of robbery and terroristic threats[.]" ***Id.*** (emphasis added).

After thorough review of both the instant record and events giving rise to the underlying offenses, we conclude Appellant committed separate and distinct criminal acts. Appellant asserts "[t]he criminal information offers only a generic recitation of the offenses and the statutory elements of each[.]" Appellant's Brief at 19. The information states:

> COUNT 2: Robbery-Inflict Serious Bodily Injury – (F1)
>
> On or about: 10/04/07         18 § 3701§§A1I
> In the course of committing a theft, inflicted serious bodily injury upon another. Victim: Dante Bolden. Age: 25.
>
> *       *       *
>
> COUNT 10: Terroristic Threats W/Int to Terrorize Another – (M1)
>
> On or about: 10/04/07         18 § 2706 §§A1
> Communicated, either directly or indirectly, a threat to commit a crime of violence with intent to terrorize another. Victim: Dante Bolden. Age: 25.

Information, 2/22/18, at 1-2. Unlike ***Martinez***, the supporting documents of record in Appellant's case reveal his conduct was not a "seamless event occurring in the course of a theft." ***See Martinez***, 153 A.3d at 1032. Rather, Appellant's conduct appears to be a series of assaults, interspersed with threats and culminating in a theft. Complainant's statements to the police detective, in summary, include: telling Appellant "nothing was wrong," he grabbed her by the hair and said, "I'm not gonna let you go until you let me

know what's wrong with you," Complainant attempted to escape, but "[Appellant] kept pulling her back by the hair;" when Complainant refused to "[g]o back upstairs," Appellant threatened, "I'm tellin you right now, go back upstairs or it's gonna get ugly;" as Appellant choked her, Complainant told him to stop, he replied "You're my property and your kids are my property;" Appellant pushed her and her son, M.G., back into the house, placed a black handgun to her neck and said, "Now you ain't goin nowhere." Affidavit of Probable Cause, 12/7/17, at 2.

The foregoing testimony, corroborated by the evidence at trial, proves Appellant committed the robbery as a part of an ongoing violent domestic assault, which started in the couple's bedroom, then moved outside, N.T., 11/14/18, at 45, 49, before ending inside Complainant's home. Appellant's ongoing conduct was sufficient to sustain separate convictions for robbery/threatening serious bodily injury and terroristic threats. **See Commonwealth v. Butcher**, 644 A.2d 174, 176 (Pa. Super. 1994) (sustaining terroristic threats conviction where appellant grabbed victim from inside her car, pushed her against the vehicle, and said in a "forceful voice, 'Don't make me get physical[.]'"). Therefore, Appellant is entitled to no relief on his first issue.

In his second question, Appellant argues his aggregate sentence of 21½ to 55 years' incarceration violates the Sentencing Code because the sentence is "manifestly excessive, unreasonable, and disproportionate" to his conduct.

Appellant's Brief at 20. He insists the trial court did not meaningfully consider the sentencing factors in imposing "essentially a life sentence[,]" in a case "where no serious bodily injury was caused[,]" by "a defendant whose only prior criminal contacts as an adult were misdemeanors and one escape charge." *Id.* at 20, 26. Additionally, Appellant argues the trial court erred in applying an incorrect offense gravity score (OGS) of 12 for robbery/threatening serious bodily injury. *Id.* at 8-9.

A challenge to the discretionary aspects of sentencing is not appealable as of right. *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). Our jurisdiction to review such a challenge is dependent upon the satisfaction of a four-prong test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted).

Here, Appellant filed a timely notice of appeal and preserved the issue in a timely post-sentence motion. *See* Appellant's Motion to Modify Sentence, 2/19/19, at 2. Furthermore, Appellant's brief properly includes the required Pa.R.A.P. 2119(f) statement. *See* Appellant's Brief at 11-14. Thus, we consider whether Appellant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth

- 15 -

in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *See Caldwell*, 117 A.3d at 768 (quotation marks and citation omitted).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Caldwell*, 117 A.3d at 768. Ordinarily, a challenge to a court's exercise of discretion in imposing consecutive sentences does not raise a substantial question. *Id.* at 769 (citation omitted). Instead, the imposition of consecutive sentences presents a substantial question in "only 'the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.'" *Id.* (citations omitted).

> To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Id.*, *quoting* *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). Additionally:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* Excessive sentencing challenges may present a substantial question if the collective sentence "appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted).

In the case *sub judice*, we conclude Appellant's challenge to the consecutive nature of his sentences, alone, does not present a substantial question. *See Caldwell*, 117 A.3d at 769. The aggregate sentence does not appear to be excessive "in light of [Appellant's] criminal conduct[.]" *See Austin*, 66 A.3d at 808. However, Appellant's claim that the trial court miscalculated the OGS for robbery presents a substantial question for our review. *See Commonwealth v. Archer*, 722 A.2d 203, 210-11 (Pa. Super. 1998) (*en banc*). Additionally, his excessive sentence claim, together with his assertion the trial court did not meaningfully consider the sentencing factors, does present a substantial question invoking this Court's jurisdiction. *See Caldwell*, 117 A.3d. at 770.

When reviewing a challenge to the discretionary aspects of sentencing, we are required to assess whether the trial court has abused its discretion. *Caldwell*, 117 A.3d at 770. We note:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id* (citation omitted).

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. McLaine***, 150 A.3d 70, 75-76 (citation omitted).

"[W]here the trial court is informed by a pre-sentence report [(PSI)], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009).

First, we note that at the sentencing hearing, the parties disagreed as to proper OGS for Appellant's robbery conviction. Appellant argued it was 10, while the Commonwealth averred it was 12. N.T. Sent'g, 2/8/19, at 10. At this juncture, we note Appellant's is correct that robbery/**threatening** serious bodily injury, under Subsection 3701(a)(1)(ii), carries an OGS of 10. ***See*** 204 Pa. Code § 303.15. Meanwhile, the OGS for a conviction under Subsection 3701(a)(1)(i), robbery/**inflicting** serious bodily injury, is 12. ***Id.*** It appears the trial court applied an OGS of 12. However, the trial court also specified its "intention to deviate from the guideline calculations for the myriad of stated cogent reasons." Trial Ct. Op. at 17; ***see*** N.T., 2/8/19, at 27 ("[M]y sentence will deviate from any guidelines, I acknowledge that."). Thus, Appellant's argument that the trial court miscalculated the standard range guideline does

J-S52028-20

not merit relief, as the court specified it was deviating from the standard range anyway.

The trial court maintains "the imposed Orders of Sentence were not unreasonable and the rationale for imposition was clearly recited." Trial Ct. Op., 2/19/20, at 15. The court acknowledged its review of the facts, the PSI, as well as "all relevant sentencing factors[,] particularly in view of [Appellant's] commission of prior offenses[.]" *Id.* at 16. The court also viewed Appellant's refusal to speak with the mental health evaluator, "cavalier lack of remorse for his actions[,]" and "[ ]overall defiant conduct as a 'level of arrogance that is most disconcerting[,]'" reinforcing the court's "perception that [Appellant] constitutes a clear and present danger to the community." *Id.*, *quoting* N.T. Sent'g, 2/8/19, at 23-24. The trial court emphasized Appellant's resistance to rehabilitation and criminal history:

> [A]t the mere age of [17] and as a juvenile he had been arrested three times. As an adult, Appellant had incurred [12] arrests, [7] convictions, [3] violations of probation and [1] pending violation, and [2] revocations of sentence. Additionally, Appellant had amassed [14] misconducts and facilitated [1] escape while in custody.

Trial Ct. Op. at 16. The court insists Appellant's sentences resulted from a reasonable exercise of the court's discretion and "fell within the statutory maximum[.]" *Id.* at 17. The trial court concludes the sentences were "imposed only after careful consideration of all relevant sentencing factors[,] including the paramount need for protection of the public, the gravity of the offense, and Appellant's poor prospect of rehabilitation." *Id.* at 20.

- 19 -

After thorough review, we find no merit in Appellant's disproportionality argument — that his sentence is manifestly unreasonable because "no serious bodily injury was **caused**[,]" and his "only prior criminal contacts as an adult were misdemeanors and one escape charge." **See** Appellant's Brief at 20 (emphasis added). His contention, that "no serious bodily injury was caused," is not persuasive, as the **infliction** of serious bodily injury was not an element of the crimes for which Appellant was convicted. Appellant arguing to the absence of serious bodily injury further minimizes the impact of his crimes and reinforces the trial court's conclusion he lacks remorse for his actions. Indeed, Appellant continues to deny the assaults against the victim and her son.[14] **See** Trial Ct. Op. at 16.

Finally, at sentencing, the trial court provided a thorough description of Appellant's extensive, criminal history in support of its "grave concerns about

_____

[14]At sentencing, Appellant stated:

> But I feel as though the DA don't know me. She going off what she is reading off the past history. Yes, I admit to some of the stuff I have done in my past, but as far as the assaults go, they never even occurred. Once females found out who I was as far as my actual name, that is what tends to happen. When they find out about my kids' mothers — find out about kids that I have, that is what they tend to do, make up stories. And whatever a female say to the cops, they automatically go with it.

N.T., 2/8/19, at 22-23.

[Appellant's] behavior in the future" and demonstrated resistance to rehabilitation. N.T., 2/8/19, at 24-25. The court stated:

> This case involved very serious charges. I recall not only the physical injuries that you inflicted upon this victim, but the circumstances involving the children who witnessed and suffered the effects of your intentional violence upon their mother and as to [M.G.,] intentionally as to him.
>
> Your overall perception of what you can and cannot do is reflected in the statements made to this [C]omplainant during this event reflected a mindset, sir, that you feel entitled to treat human beings as your property. I believe you stated words to that effect during the event. That reflects a mindset, sir, of not only lacking in remorse for your actions as evidenced today again, but someone who is going to — if and when given the opportunity — harm others in the future without regard or remorse. So to the extent that my sentence will deviate from any guidelines, I acknowledge that.

*Id.* at 26-27. The court's sentence also considered that at the time of the incident, Appellant "was absconding from probation [for] a prior domestic violence case, and "the presentence investigator noted that [Appellant's] three prior arrests have been assaults of women." *Id.* at 17, 20.

Under these facts, we conclude Appellant's sentence was not manifestly unreasonable. *See Caldwell*, 117 A.3d at 770. The trial court reviewed Appellant's PSI, and we presume it was aware of all appropriate sentencing factors. *See Ventura*, 975 A.2d at 1135. This Court's comprehensive review of the record supports the conclusion the trial court did not ignore or misapply the law in its consideration of the sentencing factors, nor did it impose the sentence with partiality, prejudice, bias or ill will. *See id.* We therefore

- 21 -

decline to find the trial court abused its discretion in imposing Appellant's aggregate sentence. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 2/17/2021*